```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**TOMMY CALHOUN, JR., on behalf
of himself and all others
similarly situated,**

       **Plaintiff,**

**v.**                               **Civil Action No. 1:19-CV-215
                                     Judge Kleeh**

**SANDBOX TRANSPORTATION, LLC,
d/b/a SANDBOX LOGISTICS, LLC,**

       **Defendant.**

**ORDER GRANTING JOINT MOTION FOR APPROVAL OF INDIVIUDAL NAMED
PLAINTIFF'S FLSA SETTLEMENT [ECF NO. 12] AND DISMISSING CASE**

Pending before the Court is the parties' Joint Motion for Approval of Individual Named Plaintiff's FLSA Settlement [ECF No. 12]. The Court convened for a hearing on November 19, 2020 to consider that motion. For the reasons articulated herein, the Court grants the motion, approves the proposed settlement and dismisses this matter from its docket.

    **I.**    **PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND**

Plaintiff Tommy Calhoun, Jr., filed his Complaint, Civil Action No. 19-C-336 against Defendants Sandbox Transportation, LLC, d/b/a Sandbox Logistics, LLC in the Circuit Court of Monongalia County, West Virginia on October 25, 2019. He asserted claims on his behalf and on behalf of others similarly situated for recovery of unpaid overtime wages, recovery of liquidated

damages and penalties, compensatory damages, punitive damages and attorneys fees under the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA") and the West Virginia Wage Payment and Collection. Act, W. Va. Code §21-5-1 et seq.  At times relevant to the Complaint, Plaintiff worked for Defendant, which provides sand used in fracking oil and gas wells around the country, loading boxes of sand weighing nearly 45,000 pounds, inspecting pallets of sand to ensure proper sealing and ensuring the safe transport of goods shipping in interstate commerce.  Plaintiff was paid hourly and did not receive any overtime premium compensation for hours worked in excess of 40 in any given workweek.  Defendant timely removed the matter to this court on December 5, 2019 and, thereafter, file its answer denying all alleged wrongdoing and asserting various affirmative answers.

As represented to the Court in both the parties' joint motion and during the November 19, 2020 hearing, the parties engaged in informal discovery without any extensive discovery provided for under the Federal Rules of Civil Procedure.  Plaintiff and Defendant ultimately reached an agreement, through negotiation between counsel, as to a mutually-agreeable resolution.  On March 16, 2020, following what the parties describe as arms-length, good-faith negotiations, the parties reached a tentative agreement to resolve this matter [ECF No. 12-2].

At the time Plaintiff filed this action in the Circuit Court of Monongalia County, Defendant was defending similar claims in a consolidated class and collective action in the United States District Court for the District of Colorado, <u>Power et al. v. Sandbox Logistics, LLC</u>, Civil Action No. 16-CV-1978.[1]  The <u>Power</u> plaintiffs alleged they were misclassified for purposes of overtime and also alleged a collective action under the FLSA and a class action under West Virginia law.  They sought to represent Defendant's allegedly misclassified employees in West Virginia including Plaintiff here.

In fact, the <u>Power</u> parties had reached a tentative settlement when Plaintiff filed his suit in Monongalia County – only one month later did Judge Kane approve the settlement proposed in the <u>Power</u> matter.  That Order would have included Plaintiff's FLSA and West Virginia Wage Payment and Collection Act claims in this case. Plaintiff did receive a Rule 23 Notice pursuant to Judge Kane's Order and there is no dispute he did not formally opt-out. However, through communication between Plaintiff's counsel here and the <u>Power</u> plaintiffs' counsel, Calhoun advised of his intention to opt-out of the <u>Power</u> class and collective action to negotiate

---

[1] On September 2, 2016, Plaintiff Darian Rayfield filed a separate class and collective misclassification action against Defendant also in the District Court of Colorado (Civil Action No. 16-CV-2231).  That matter was consolidated with the <u>Power</u> matter on January 5, 2017.  All purported West Virginia claims remained in that case.

an individual settlement of his claims.  Plaintiff was the **ONLY** putative plaintiff to opt-out of the Power matter.  Judge Kane entered his order giving final approval to the Power settlement on February 18, 2020 which, of course, resolved all other putative class members' claims against Defendant.

## II.   APPLICABLE LAW

"Courts should approve joint settlement agreements of FLSA claims 'if a proposed settlement reflects a reasonable compromise over contested issues." Senior v. Robert Newlin Airport, Inc., No. 3:18-1382, 2019 WL 4267488, at *2 (S.D. W. Va. Sept. 9, 2019) (quoting Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310, 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009)). As Judge Bailey of this Court astutely noted, "[s]ettlements are permissible in the context of an FLSA lawsuit because initiation of the action provides some assurance of an adversarial context in which an employee is likely to be represented by an attorney who can protect his rights."  Weller v. Dolgencorp, Inc., 3:09-CV-22, 2011 WL 121914, at *1 (N.D.W. Va. January 13, 2011); see also Brockman v. Keystone Newport News, LLC, No. 4:15-cv-74, 2018 WL 4956514, at *2 (E.D. Va. Oct. 12, 2018) ("[W]here there is an assurance of an adversarial context and where [an] employee is represented by an attorney who can protect [his] rights under the statute, [a] settlement will be approved.").  This approval process embraces a "relatively forgiving standard" that reflects "the

4

uncertainty of the litigation process" and legal and "factual disagreements." Senior, 2019 WL 4267488 at *2.  "Indeed, [t]here is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable."  Weller, 2011 WL 121914 at *1 (quotations and citations omitted).

Although the Fourth Circuit has yet to promulgate the factors district courts should deploy in analyzing FLSA settlements, this Court and others in the Circuit have used the same construct as initially set forth by the Eleventh Circuit.  See Duprey v. Scotts Co., LLC, 30 F.Supp.3d 404, 407-08 (D. Md. 2014) (quotation and citation omitted); see, e.g., Anderson v. PNGI Charles Town Gaming LLC, 3:04-CV-42, 2008 WL 11452104 (N.D.W. Va. August 1, 2008) (Stamp, J.); Howell v. Dolgencorp, Inc., 2:09-CV-41, 2011 WL 121912 (N.D.W. Va. January 13, 2011) (Bailey, J.); Young v. Act Fast Delivery of West Virginia, Inc., 5:16-CV-9788, 2020 WL 4805036 (S.D.W. Va. August 18, 2020) (Volk. J.); Federer v. Genesis Eldercare Rehabilitation Servs., 3:17-CV-211, 2017 WL 5495809 (S.D.W. Va. October 26, 2017) (Chambers, J.). Under this approach, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."  Mayhew v. Loved Ones in Home Care,

LLC, No. 2:17-cv-03844, 2020 WL 1492542, at *1 (S.D. W. Va. March 26, 2020) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982)).  Again, turning to Judge Bailey's prior summation,

> [t]he factors courts typically consider in determining whether a proposed settlement of FLSA claims is fair and reasonable are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff; (5) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery.

Weller, 2011 WL 121914 at *2.  In short, this Court must determine whether this settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, 679 F. 2d at 1355.[2]

### III. DISCUSSION

The Court will address each relevant factor in turn.

#### A. Extent of Discovery

This matter is somewhat unique in that formal discovery efforts were absent prior to the resolution negotiated between counsel.  The parties were able to reach that proposed settlement

---

[2] Also embedded in the Court's inquiry is whether the attorney's fees and expenses are fair and reasonable.  See Senior, 2019 WL 4267488 at *2.

after only exchanging "informal discovery."  However, this litigation does not exist in a vacuum – the Power case had been litigated for years before Plaintiff filed this matter.  The parties in Power engaged in discovery giving Defendant access to all the relevant information (including any and all West Virginia putative plaintiffs) it would need to defend in this matter.  Neither counsel indicated being deprived of relevant or necessary information to knowingly engage in settlement discussions.  "Thus, it is clear that the Parties had adequate time to conduct sufficient discovery to fairly evaluate the liability and financial aspects of [the] case."  Weller, 2011 WL 121914, at *2.

### B. The Stage of the Proceedings, Including the Complexity, Expense and Likely Duration of the Litigation

In their Joint Motion, the parties represent that resolution of this matter is in their collective and individual "best interests" considering the "potential expense, inconvenience and delay that would be required to continue litigating this case." [ECF No. 12-1 at 7].  The Court is particularly mindful of the veracity of this representation considering Defendant has already litigated this question (and, formally, Plaintiff's claims) in Power.  Further, Defendant's legal defense would require extensive motions practice and briefing on the question of whether Plaintiff was exempt from overtime pay under FLSA's Motor Carrier Act exemption, 29 U.S.C. §213(b)(1).

7

C. **The Absence of Fraud or Collusion In The Settlement**

Both parties were represented before and throughout this matter by competent and capable counsel. Based on this Court's experience and review of the parties' settlement agreement [ECF No. 12-2], it is clear this resolution is an obvious product of arms-length negotiation devoid of any indication that fraud or collusion is afoot. The Court is further struck that this settlement is before it for approval after the Power case was settled and approved by Judge Kane – a fact well-known to counsel for both parties here. Likewise, as discussed in more detail supra, the settlement terms here are significantly more favorable to Plaintiff than the consideration he would have received had he benefitted from the Power compromise.[3]

D. **The Experience of Counsel who have Represented the Plaintiff**

Plaintiff's counsel is experienced in litigating and resolving employment-related claims, including wage and hour matters. Counsel represented at the November 19, 2020 hearing that over 70% of his practice is dedicated to employment

---

[3] The Court confirmed during the November 29, 2020 hearing Plaintiff will not reap a windfall with the approval of the settlement in this matter. Again, Plaintiff failed to formally opt-out of the Power settlement despite counsel's communications with the Power plaintiffs' lawyers. Defendant prepared a check payable to Plaintiff Calhoun for $1,300 after Judge Kane approved the settlement in Power. At the hearing in this matter, defense counsel confirmed that check was not forwarded to Plaintiff Calhoun and was destroyed instead.

litigation. Although no formal opt-out notice pursuant to Judge Kane's order was ever filed, counsel was astute enough to notify plaintiffs' counsel in Power to advise Plaintiff Calhoun did not wish to participate in that class and collective settlement and preferred to pursue an individual case. That decision, no doubt aided by counsel, proved provident given the comparative settlement terms between the two matters.

### E. The Probability of Plaintiff's Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery

Defendant denied Plaintiff's misclassification and other allegations in this matter placing the significant questions to Plaintiff's success in dispute. Defendant raised the specter of whether Plaintiff was exempt from any overtime compensation requirement under the Motor Carrier Act FLSA exemption. Considering that, the Court cannot divine a reason to disagree with the parties that the agreed-to consideration is an unfair or unreasonable compromise factoring in the likelihood of each parties' success on the merits. "Courts are entitled to rely on the judgment of counsel for the parties in performing the 'balancing task' necessary to reach a settlement, and 'absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.'" Id. at *3 (quoting Lomascolo, 2009 WL 3094955 at *10 and Cotton v. Hinton, 528 F.2d 1326, 1330 (5th Cir.1977)).

9

\*\*\*

Having considered all of the required factors, the Court finds each of those factors counsel in favor of approving the parties' proposed settlement in this matter. The Court also finds, based on those findings and as explained hereinafter, the terms and conditions of the parties' Settlement Agreement [ECF No. 12-2] are a fair and reasonable resolution of a bona fide FLSA dispute. Initially, the gross settlement proceeds in this matter are $14,000 [ECF No. 12-2 at 3]. That amount is apportioned as follows: $3,500 payable to Plaintiff as wage damages, $3,500 payable to Plaintiff as non-wage damages and $7,000 payable to counsel for his attorney fees and expenses [ECF No. 12-2 at 3]. The gross sum here is ten-fold more than Plaintiff's potential settlement in the Power matter.

Considering that, the Court finds the settlement here to be fair and reasonable. As discussed at the November 19, 2020 hearing, the Court is also satisfied that this settlement agreement provides sufficient consideration for Plaintiff to not only release his FLSA claims but also all of the other non-asserted claims included in the release provisions of the parties' settlement agreement [ECF No. 12-2 at 4 "Calhoun's General Release of Claims"]. See Duprey, 30 F.Supp.3d at 410 ("A general release like this can render the agreement unreasonable ... But, if the employee is compensated reasonably for the release executed,

the settlement can be accepted, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claims.").

The parties jointly represent to the Court the attorney's fees and expense in this matter are likewise fair and reasonable. They assert the number (20) of hours invested and the proposed $350-per-hour rate makes the fee apportionment reasonable under the traditional lodestar formula. There is no dispute as to Counsel's amount of work. Counsel represented to the Court that he has previously been approved at a rate of $350-per-hour, most recently by the Honorable Judge Jennifer Bailey in the Circuit Court of Kanawha County. Defense Counsel takes no issue to this rate here. Considering prior fee awards approved in West Virginia, the Court finds no reason in the record before it to find the fee award anything other than reasonable. See Senior, 2019 WL 4257488 at *2 ("Courts in this district have routinely held that an hourly rate of $350 is reasonable for lawyers of comparable skill, experience, and reputation in the context of FLSA settlement agreements.").

The last issue with respect to final disposition of this matter are Plaintiff's state law claims under the West Virginia Wage Payment and Collection Act, W. Va. Code §21-5-1 et seq. including his purported claims on behalf of others similarly situated to him. Initially, any state law claims for overtime premium pay on behalf of any putative class members here have

11

already been dismissed pursuant to the settlement approval order in Power.  Power, 1:16-CV-1978, ECF No. 42.  No one other than Plaintiff Calhoun opted out of that settlement and those claims are therefore dismissed by order of the United States District Court for the District of Colorado.

With respect to Plaintiff here, the parties represent in their Joint Motion that they agree that statute does not provide a vehicle for recovery of allegedly unpaid overtime wages for employers subject to FLSA's broad reach [ECF No. 12-1 at 8].  The Court joins the chorus of agreement.

Judge Goodwin, sitting at the Clarksburg point of holding court in this district, previously addressed that question in Westfall v. Kendle Intern., CPU, LLC, 1:05-CV-118, 2007 WL 486606 (N.D.W. Va. February 15, 2007).  Therein, he found

> [o]vertime is a premium rate of pay and accordingly, the FLSA makes the premium rate obligatory to those employers covered by FLSA. The FLSA entitles workers to receive rates above their normal working wage for working extra hours-not for performing an additional service or labor. The WPCA does not create a right to the overtime premium. Moreover, the West Virginia overtime act does not apply to the Clark and Kendall defendants, thus the only obligation to pay overtime to the purported employees arises under the FLSA. The FLSA creates the right to overtime and provides the exclusive remedy for the recovery of such premium pay. Tombrello v. USX Corp., 763 F.Supp. 541, 545 (N.D. Ala. 1991) ("Courts have consistently held the [FLSA] is the exclusive remedy for enforcing rights created under the FLSA."); see also Roman v.

>> Maietta Constr., 147 F.3d 71, 76 (1st Cir. 1998).

Id. at *16.

There is no dispute the FLSA is the exclusive avenue of relief for Plaintiff with respect to allegedly unpaid overtime wages. Defendant is not covered by the West Virginia Minimum Wage and Maximum Hours Standards for Employees Act, W. Va. Code §21-5C-1 et seq., by virtue of the application of FLSA to more than 80% of its employees. See W. Va. Code §21-5C-1(e). Without this statutory claim available here, no other state law can provide the basis for the relief Plaintiff seeks – "the West Virginia Wage Payment and Collection Act addresses the timing of wage payments and cannot form the basis for a claim of failure to pay overtime wages." Nester v. Hampton Inn Princeton, 1:13-CV-3336, 2013 WL 5425123 at *3 (S.D.W. Va. September 16, 2013). Thus, there is no legal basis under West Virginia state law for Plaintiff to seek allegedly unpaid overtime compensation. The non-FLSA claims are therefore **DISMISSED WITH PREJUDICE.**

### IV. CONCLUSION

Thus, having reviewed and considered the parties' settlement agreement, the pending joint motion and the arguments of counsel, this Court finds, for the reasons stated above, the parties' proposed resolution to be in compliance with the dictates under the FLSA and finds it to be a fair and reasonable resolution of a

bona fide FLSA dispute pursuant to the authority referenced herein. Accordingly, it is hereby **ORDERED** that the parties' Joint Motion for Approval of Individual Named Plaintiff's FLSA Settlement [ECF No. 12] be **GRANTED** and that the above-styled case be **DISMISSED WITH PREJUDICE.**

The Clerk is hereby directed to electronically provide a copy of this Order to all counsel of record and any unrepresented parties.

IT IS SO **ORDERED.**

**ENTERED:** November 23, 2020

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE